## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| Pablo Fernando Sevilla, | ) | Bankruptcy Number 22-04870 |
| | ) | |
| Debtor. | ) | Judge Timothy A. Barnes |

### NOTICE OF AMENDED OBJECTION

TO: See Attached Service List

PLEASE TAKE NOTICE that on February 1, 2024, 2023, at 11:00 a.m., I, or my appoint attorney, will appear before the Honorable Timothy A. Barnes, or any judge sitting in that judge's place, and present the **AMENDED OBJECTION of Pablo Fernando Sevilla for Federal Rules of Bankruptcy Procedure Rule 3007 an Amended Objection as to PNC Bank, N.A.** a copy of which is attached.

**All parties in interest, including the movant, may appear for the presentment of the Amended Objectioin either in person or electronically using Zoom for Government (audio only).**

**To appear by Zoom using the internet,** go to this link: https://www.zoomgov.com/. Then enter the meeting ID and passcode.

**To appear by Zoom using a telephone,** call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and passcode.

**Meeting ID and passcode.** The meeting ID for this hearing is 161 329 5276, and the passcode is 433658. The meeting ID and passcode can also be found on the judge's page on the court's web site.

**If you object to this Amended Objection and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without calling it.**

Pablo Sevilla
600 West Lonnquist
Mount Prospect, IL 60056
Phone 847.340.7686

**F I L E D**

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF ILLINOIS**

**NOV 30, 2023**

**JEFFREY P. ALLSTEADT, CLERK**

<u>CERTIFICATE OF SERVICE</u>

I, Pablo F. Seville, hereby certify that I caused a copy of this notice to be served by the
method stated on the attached service list upon the above parties on August 2, 2023
before the hour of 5:00 p.m. from M as stated on the attached service list.

By: _____

Pablo F. Sevilla
600 W. Lonnquist
Mount Prospect, IL  60056
(847) 340-7686

Thomas H. Hooper, Chapter 13 Trustee
55 E. Monroe Street,  Suite 3850
Chicago, Il  60603

VIA CERTIFIED MAIL RETURN
  RECEIPT REQUESTED

Patrick S. Layng
United States Trustee (Region11)
219 S. Dearborn Street  ROOM 873
Chicago, IL  60604

VIA CERTIFIED MAIL RETURN
  RECEIPT REQUESTED

PNC Bank, NA
Mr. Robert Reilly, Executive Vice President
222 Delaware Ave
Wilmington, DE 19801

VIA CERTIFIED MAIL RETURN
  RECEIPT REQUESTED

William S. Demchak, CEO
PNC Bank, NA
222 Delaware Ave
Wilmington, DE 19801

VIA CERTIFIED MAIL RETURN
  RECEIPT REQUESTED

PNC Bank, NA
c/o Michael Dimand
Dimand Law Office, PC
125 E. Lake St, Suite 206
Bloomingdale, IL  60108

VIA CERTIFIED MAIL RETURN
  RECEIPT REQUESTED

Christopher Baxter
Marinosci Law Group, P.C.
14643 Dallas Parkway; Suite 750
DALLAS, TX 75254

VIA CERTIFIED MAIL RETURN
  RECEIPT REQUESTED

Heavner, Beyers & Mihlar, LLC
601 E. Williams St
Decatur, IL  6252

VIA CERTIFIED MAIL RETURN
  RECEIPT REQUESTED

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| Pablo Fernando Sevilla, | ) | Bankruptcy Number 22-04870 |
| | ) | |
| Debtor. | ) | Judge Timothy A. Barnes |

**F I L E D**

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF ILLINOIS**

**NOV 30, 2023**

**JEFFREY P. ALLSTEADT, CLERK**

## DEBTOR, PABLO FERNANDO SEVILLA'S, AMENDED OBJECTION TO THE PROOF OF CLAIM FILED BY PNC BANK, N.A.

Now comes the Debtor, Pablo Fernando Sevilla ("Debtor"), Objecting to the Proof of Claim #5 filed by **PNC Bank, N.A.** and states as follows:

### Introduction

The Debtor filed a voluntary petition seeking relief under Chapter 13 of the Bankruptcy Code on April 28, 2022. At the time of filing, and today, the Debtor is the owner of a rental property at 1152 N. Beverly Ln, Arlington Heights, IL 60005. ("Beverly Property") This property had an Equity Reserve Line of Credit, a secured debit card/bank account, a 2nd lien, from National City Bank originated on June 18, 2007 for an extension of credit, as needed, with a credit limit of $86,500. The outstanding balance was paid in full on July 27, 2007. This is a non-negotiable, non-assumable, non-assignable bank account/debit card at National City Bank.

Although the balance due was paid by the Debtor on July 27, 2007 to National City Bank, the Proof of Claim #5 was unfounded and invalidly filed by attorney Christopher Baxter of the Marinosci Law Group, Dallas, TX on 7/7/2022 claiming PNC Bank, N.A. was owed $16,008.11, an amount of credit never extended to borrower by PNC Bank, N.A.

1

## RELEVANT FACTS

1.     Debtor filed this case on April 28, 2022.

2.     The plan is to include debts owed by Debtor, however, it was not to include debts that were paid in full by Debtor sixteen years ago.

3.     Debtor attended his meeting of creditors on June 9, 2022.

4.     Debtor received an objection to confirmation filed by PNC Bank, NA on July 13, 2022 and began discussions immediately thereafter.  It was recognized that the previous attorney, Penny Bach had assigned to PNC the incorrect collateral for the paid off credit line.

5.     PNC Bank and the Chapter 13 Trustee were aware of the Debtor working with all parties to resolve discrepancies in the claims and the actual amounts that Debtor was aware were due at this time.

6.     Debtor has not received a request for payment of this paid off debt for over 11 years and was surprised when without validity or authenticity, an erroneous request was made to pay a debt that was not due, and had been paid in full on July 27, 2007.  At this point, the collection of the debt was time-barred.

7.     Upon advice from the Courts and the Consumer Financial Protection Bureau, a regulator of PNC Bank, NA, Debtor turned to a HUD trained counselor Cyndee Rae Estrada, who is also an Expert Witness for advice and assistance in finding the proper party to discuss this untrue and invalid request for payment. (See Exhibit A Declaration of Cyndee Rae Estrada)

8.     Debtor discovered that the claims of the legally insufficient and invalidly recorded assignments did not express true actions supported by actual events as

this checking account/debit card has never been purchased by a new Lender or a debt buyer, and access for Debtor assigned to a new bank.

9.     While the mortgage seems to have been assigned to an insurance company that pays lenders for insured debt, the actual bank account/debit card was not assigned to the United Guaranty Residential Insurance Company of North Carolina ("United"). A check with the Department of Insurance and the Commissioner of Insurance in North Carolina provided the information that United was actually a "re-insurer" who pays other insurance companies for loses due to payments to *their insured clients*. There is no relationship with the Debtor as they did not receive, purchase, nor was United assigned the debt.

   a. F.R.S. Development Co., Inc. v. American Community Bank and Trust,
   Appellate Court of Illinois, Second District. February 23, 2016 2016 IL
   App (2d) 150157, **Headnote:** A "mortgage" is an interest in land, created
   by a written instrument providing security in real estate **to secure
   payment of a debt**. It is well settled law throughout the Courts that an
   assignment of the Note carries with it the assignment of the security
   instrument, however, an assignment of the mortgage only (a mere incident
   to the Note), provides no rights to the assignee. "The mortgage is deemed
   a mere incident to the mortgage debt, and the conveyance of the interest of
   the mortgagee in the land, without an assignment of the debt, is considered
   in law as a nullity...." It must be clearly understood that an assignment of
   a Note, by operation of law, does not create an indorsement to a new
   party. Without the proper indorsement, a promissory note will not be

transferred to a new party as the compulsory and obligatory requirement of 810 ILCS 5/Uniform Commercial Code Article 3-303 (from Ch. 26, par. 3-303) Sec. 3-303 still applies to enforcement. However, since this is a non-negotiable debt, it can only be transferred by the laws of 810 ILCS 5/Uniform Commercial Code Article 9.

10.     A call to PNC Bank, NA, Zacha Gonzalez, Officer Executive Client Relations Specialist at 269-544-3902, confirmed that the credit line had been paid by check on July 27, 2007. That transaction was found in the records that exist at PNC Bank, NA regarding this bank account/debit card.

11.     However, Proof of Claim #5 does not have any records of this transaction and the transactional accounting in the proof of claim starts five (5) full years after the time-barred date for collection of this non-negotiable debit card account. This debt is time-barred and does not belong on Debtor's Chapter 13 payment plan. The purported mortgage has not "followed" or continued attachment to this debt pursuant to 810 ILCS 5/ Uniform Commercial Code Article 9-203 (from Ch. 26, par. 9-203) Sec. 9-203(b)(1) still applies to enforcement that value must be given for the debt, and this was never the case.

12.     This insurance company did not pay off the debt of the credit line; the insurance company paid a policy for an unknown party that had a contract between the insurance company and the re-insurer, however, this was not a contract or an obligation with the Debtor that the Debtor must repay to PNC Bank, NA.

13.     The Proof of Claim does not even have any information that credit was given to the Debtor. At the time of the closing, there is no accounting of an extension of credit to the Debtor. The maximum allowed credit limit is set at $86,500, however, there is no evidence that there were any draws on this account before 2018. In fact, the only draw on the account, according to the Proof of Claim #5, took place on 2/26/2018 were there was a late charge of $40.00 while the balance of the loan was ZERO, no money was owed. Suddenly an amount of $17,908.26 was due and owing with no explanation of what happened to the rest of the $86,500.

14.     The proof of claim does not show any credit being extended to the borrower at any time, as opening a bank account and issuing a debit card does not extend credit until the checks are written or the debit card is used. There is no evidence that these events took place by the information presented on the proof of claim.

15.     The Proof of Claim #5 contains copies of public documents that have been redacted by this attorney, which negates the use of these public documents as evidence of a debt.

16.     There is no evidence that at the time of any mergers or acquisitions that this exact bank account/debit card was an asset of National City Bank and that the merger included the liability presented by this paid off bank account, that at best might have had a charged off balance, if any, as explained by the Executive Offices of PNC Bank, NA.

## ARGUMENT

The purpose of the Bankruptcy Code "is to grant a fresh start to the honest but unfortunate debtor." *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007). Bankruptcy judges are given broad discretion to uphold this central tenet of the Code, which includes the statutory power to take any action that is necessary or appropriate "to prevent an abuse of process." 11 U.S.C. § 105(a).

The Debtor did not just sit on his hands and wait for the purposed debt buyer (creditor) to assent. The Debtor moved forward the only way he thought he could. The Debtor made his plan payments, which are current as of many months ago. The Debtor sought outside help form recommended HUD trained counselor and Expert Witness to obtain the evidence necessary to prove that this debt was paid. The Debtor has worked hard with the HUD counselor and the banking expert and the actual bank employees, to do what the Debtor believed the Debtor was supposed to be doing.

## JURISDICTIONAL CONSEQUENCE: MAIN IMPEDIMENT TO THE FILING OF A PROOF OF CLAIM BY MARINOSCI LAW GROUP, P.C. AND ATTORNEY CHRISTOPHER BAXTER

Once this Proof of Claim #5 was field by the law firm, the firm runs the risk that the claim will be lost forever (see *ResCap Liquidating Trust v. PHH Mortgage Corp. (In re Residential Capital, LLC)*, 558 B.R. 77 (S.D.N.Y. Sept. 21, 2016)) The act of filing a proof of claim can waive certain rights and have significant collateral effects on future litigation. The act of filing a proof of claim constitutes a party's consent to the jurisdiction of the bankruptcy court to adjudicate both:

Matters pertaining to the claim itself.

Related matters, including claims by the debtor against the creditor.

This filing of the proof of claim has the effect of bringing any number of related claims into the ambit of the bankruptcy court and, at the same time, deprive the creditor of the right to seek a jury trial (see *In re Cruisephone, Inc.*, 278 B.R. 325, 330 (Bankr. E.D.N.Y 2002) "By filing a claim against the estate, a creditor triggers the process of allowance and disallowance of claims and an adversary proceeding seeking recovery against the creditor becomes part of that claims allowance process.". Existing US Supreme Court precedent confirms the essential nature of the proof of claim in allowing bankruptcy courts to hear and determine avoidance actions by debtors in bankruptcy with no right to a jury trial (see *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990); *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989)).

This Proof of Claim #5 is a sworn and signed document attesting to the validity of a claim. Any misrepresentations in the proof of claim or the documents attached can provide a basis for disallowance, sanctions, or worse. This is especially the case for declarations or affidavits filed in support of a proof of claim, particularly when considering the filer's understandable desire to tell its story in a light most favorable to allowance of the claim or even for convincing claims traders to buy the claim.

Federal Rule of Bankruptcy Procedure 3001(b) provides that a proof of claim may be executed by the creditor or, with limited exceptions, by "the creditor's authorized agent." The proof of claim constitutes a sworn statement representing that the information is true and, therefore, Debtor has evidence that Christopher Baxter could be liable even if PNC Bank, N.A. provided false information or made misrepresentations

regarding the basis for the claim or the claim amount, whether intentionally or unintentionally.

Since Christopher Baxter signed the proof of claim, the he may be subject to sanctions under Federal Rule of Bankruptcy Procedure 9011 if the court determines that there was, in fact, no reasonable basis for the claim (or worse, if there has been any fraudulent conduct in preparing the proof of claim (see Fraud, Perjury, and Administrative Inconvenience)). Christopher Baxter possesses no first-hand knowledge of the validity of the claim and has personal liability for these violations.

Further, Bankruptcy Courts have concluded that, in signing a proof of claim on behalf of a client, the attorney becomes a fact witness about the validity of the claim and therefore waives the attorney-client and work-product privileges concerning the facts set out in the proof of claim (see *In re Rodriguez*, 2013 WL 2450925 (Bankr. S.D. Tex. June 5, 2013) (noting that a proof of claim is not like a complaint because, under Federal Rule of Bankruptcy Procedure 3001(f), it inherently "constitute[s] prima facie evidence of the validity and amount of the claim")).


## EVIDENCE IS NECESSARY TO INCLUDE A PAID-OFF DEBT IN THE PLAN


While the Debtor worked through the items he believed were required of the Debtor, PNC BANK, NA, the purported debt buyer (the creditor is National City Bank) and the Debtor were in communication with each other. Zacha Gonzalez, Officer Executive Client Relations Specialist at 269-544-3902 confirmed that a check was

received by National City Bank on July 27, 2007 paying the balance on this credit line/debit card that was due at that time. See Exhibit B: Affidavit of Pablo Sevilla)

To confirm the pay off, Debtor is in touch with the bank that refinanced the loan on July 27, 2007 to receive the settlement statement from the refinance showing that JP Morgan Chase was the bank that paid off the loan in order to be in 2nd position as a lien holder on the property. JP Morgan Chase refused to enter into a refinance agreement where they would be a 3rd position lien on the property. The refinance required the closing of the National City bank account/debit card and removal of the lien.

The refinance loan was also subsequently paid off to JP Morgan Chase and this JP Morgan Chase lien was removed from the property. Debtor will prove to the Court that the title company and National City Bank erred in not releasing the lien at the time of the refinance and this will be cleared up by both National City and JP Morgan Chase as Debtor has ordered the documents and awaiting their arrival at this home address.

As the Debtor had Title Insurance on this property at the time of these financial transaction, Debtor will be exploring the claim to the insurance company to assist in clearing these issues off of the property report.

The Debtor has been diligent in pursuing this case. He has made his plan payments and has been attending hearings anytime his case was called. There is no prejudice to creditors, as the creditors need to resolve the claim issues that are related to the proper parties and lien concerns.

WHEREFORE, the Debtor, Pablo Fernando Sevilla requests that this Court allow subpoenas be issued to the all parties in possession of certain evidence outlined by the regulators, and the FDCPA law and the CFPB, necessary to prove that PNC Bank, NA

has NEVER extended credit to Debtor and can not be considered a creditor in this bankruptcy and that the purported creditor must have the evidence of a debt by a legally transferred promissory note and paid for pursuant to 810 ILCS 5/Uniform Commercial Code Article 9-203, transferred by National City Bank for enforcement. This is necessary to include this debt in Debtor's plan for repayment, if it is still owed.

Respectively Submitted,

_____
Pablo Fernando Sevilla
600 West Lonnquist
Mount Prospect, IL 60056
Phone 847.340.7686

Exhibits:

Exhibit A: Declaration of Cyndee Rae Estrada
Exhibit B: Affidavit of Pablo Fernando Sevilla

# EXHIBIT

# A

| In Re: | Case No. 22-04870 |
|---|---|
| | Chapter 13 |
| Pablo Fernando Sevilla, | Plan filed on May 24, 2022 |
| | Affidavit In Support of The Non-Ownership |
| Debtor. | and Non-participation of PNC Bank as a 2nd |
| | lien on property at 1152 N Beverly Ln, |
| | Arlington Heights, Il 60005 In this |
| | Bankruptcy as This Loan Was Not Involved |
| | In Any Mergers or Acquisitions with |
| | National City Mortgage |

## AFFIDAVIT IN SUPPORT OF THE NON-OWNERSHIP AND NON-PARTICIPATION OF PNC BANK AS A 2ND LIEN ON PROPERTY AT 1152 N BEVERLY LN, ARLINGTON HEIGHTS, IL 60005 IN THIS BANKRUPTCY AS THIS LOAN WAS NOT INVOLVED IN ANY MERGERS OR ACQUISITIONS WITH NATIONAL CITY MORTGAGE

Now comes Cyndee Rae Estrada, on oath, and deposes and states as follows:

1. I, Cyndee Rae Estrada, am the HUD Counselor and Expert Witness for Pablo Sevilla in Bankruptcy Case No. 22- 04870.

2. I am at least 18 years of age and of sound mind.

3. Attached you will find my Curriculum Vitae in support of my 22 plus years in the banking industry. I have had over ten years of legal training in the area of loan origination, lending, servicing, as a HUD Counselor, working with the Securities and Exchange Commission and as an Expert Witness in cases across the Country.

4. I make this affidavit based on personal knowledge revealed to me as I requested evidence of the events that took place before, after and during the time that Mr. Pablo Sevilla received a loan from National City Bank a California Corporation, on June 18, 2007.

5.     On July 27, 2007 and the funds from the new 2nd lien in favor of JP Morgan Chase which proceeds from the loan paid off the balance due on the loan on July 27, 2007 when approximately $68,5000 was paid to National City Bank.

6.     National City Bank assigned the mortgage dated March 20, 2009, without the assignment of any debt or any note, assigning only the mortgage from National City Bank to the Mortgage Insurance Company of United Guaranty Residential Insurance Company of North Carolina, even though no mortgage insurance was associated with this 2nd lien loan. This assignment was recorded even though the loan was paid off 2 years before this assignment took place.

7.     National City Bank is a national bank, regulated by the Office of the Comptroller of the Currency of the United States Department of the Treasury. It has been a wholly owned subsidiary of the Royal Bank of Canada since 2015.

8.     I have personally researched the events and accountings of United Guaranty Residential Insurance Company of North Carolina, which was bought by ARCH Insurance in 2022 and no longer exists. However, in 2023, after the filing of this bankruptcy, the company that no longer exists known as United Guaranty Residential Insurance Company of North Carolina did an assignment of the mortgage, again without the debt and without the note, to PNC Bank. This assignment gave no rights in the note or in the debt to PNC Bank. Mr. Sevilla did not owe any money to anyone at this time. As the assignment was though an insurance company, it is only natural to evaluate the mortgage was without a debt that was insurance and paid, proving again that the debt is completely paid off.

9.     The Proof of Claim offered by PNC Bank has no information regarding the assignment of mortgage in 2009 and the assignment of mortgage on May 17, 2023, or the payment by JP Morgan Chase in July of 2007 and the closing of this credit line. JP Morgan Chase is not and would not agree to be in 3rd position lien on the property.

10.     It was obvious to PNC Bank when they were called directly at their lien release and corporate offices that there were documents missing from the Proof of Claim

2

submitted by the attorneys. The case has been escalated to Zacha Gonzalez, Officer Executive Client Relations Specialist PNC Bank (P) 269-544-3902.

11. Ms. Gonzalez is researching the payoff of the loan on July 27, 2007, or the confirmation that the balance due on the credit line of approximately $68,500 was indeed received at the offices of National City Bank.

12. Ms. Gonzalez is researching the complete PAYMENT HISTORY from 2007 through 2023. The Proof of Claim accounting shows that on February 1, 2018, Mr. Sevilla owed no money on this credit line. Mr. Sevilla owed no money from July of 2007 until February 26, 2018 when a loan of $17,908.25 was activated and funded based on a request by someone that is at this time is unknown to both PNC Bank and Mr. Sevilla.

13. Mr. Sevilla has requested no money on this credit line since 2007 when he closed this credit line to obtain more money from a JPMorganChase Bank loan with a larger credit limit than the $86,500 he would have been able to charge on the PNC Credit Line.

14. Ms. Gonzalez is researching this account because no one can find any money being lent to Mr. Sevilla at any time between July 2007 and 2023, as no statements were generated between 2007 and 2018. Suddenly a balance showed up in the very incomplete PAYMENT HISTORY from 2018 through 2023.

15. Ms. Gonzalez is aware now that The Proof of Claim accounting shows that on February 1, 2018, Mr. Sevilla owed no money on this credit line. Since the loan was purportedly paid by the mortgage insurance company in 2009 and the mortgage was still at the insurance company until May of 2023, there was no company servicing the loan, as the debt was either gone or still at National City Bank, who was not servicing the loan. United Guaranty Residential Insurance Company of North Carolina, the holder of the mortgage was not servicing the loan either from 2009 to May of 2023.

16. PNC had no assignments of the debt at any time. PNC did have an assignment of the mortgage in May of 2023; however, PNC was never the holder of the credit line

3

or of the debt. Since the credit line was a non-negotiable debt and cannot transfer to any institution other than another bank, PNC did not get the debt from the party with the mortgage, which was an insurance company and the mortgage and the note ere obviously split from each other, however, PNC only received the mortgage and not the credit line from United Guaranty, therefore no debt was transferred for collection.

17. While the research is on-going, and the missing documents will have to be produced, including the payment of July 27, 2007, It will become obvious that the Proof of Claim from PNC Bank is a mistake and nothing is owed by Mr. Sevilla.

I, Cyndee Rae Estrada, under penalty of perjury, make the above statements and swear they are true and correct and will be prepared to testify to these facts if required.

Dated: _November 8, 2023_                _Cyndee Rae Estrada_
Cyndee Rae Estrada

| In Re: | Case No. 22-04870 |
|---|---|
| | Chapter 13 |
| Pablo Fernando Sevilla, | Plan filed on May 24, 2022 |
| | Affidavit In Support of The Debt Paid On |
| Debtor. | July 6, 2007 Referenced as Proof of Claim #5 |

Affidavit In Support of The Debt Paid On July 6, 2007 Referenced as Proof of Claim #5

Now comes Pablo Fernando Sevilla, on oath, and deposes and states as follows:

1.     I, Pablo Fernando Sevilla, am the Debtor in the current Bankruptcy Case No. 22-04870.

2.     I am at least 18 years of age and of sound mind.

3.     I make this affidavit based on personal knowledge of the events that took place before, after and during the time that I received a loan from National City Bank on June 18, 2007 and paid off in full on July 27, 2007.

4.     At that time I had a Line of Credit with National City that allowed me to borrow sums of money at my option, up to the credit limit of $86,500.

5.     I was told by the mortgage broker that receiving a better credit line from JPMorgan Chase was more advantageous than simply asking National City Bank (National City) for a larger maximum amount on the new credit line that I had just received.

6.     I know now that the better plan would have simply been to contract National City and ask for an extension of funds for my needs. I regret that I listened to the broker and did not simply ask for more funds from National City, especially since I had not even borrowed all of the money from National City at that time.

7.     On July 26, 2007 I had an appointment at TransUnion Settlement Solution, 5300 Brandywine Pkwy, Ste 109, Wilmington, DE 19083 at their location in Cook County Illinois to close out the revolving credit line from National City Bank that had a maximum credit limit of $86,500. I was refinancing and this lien was to be

1

released in the Cook County records in order to receive new financing, in the position as a 2nd mortgage revolving credit line with a maximum credit limit in the amount of $123,000 funded by JPMorgan Chase Bank (Chase Bank)

8.     I personally was told that Chase Bank was not going to be a 3rd mortgage on the property and demanded that the National City revolving credit line be <u>Paid IN FULL</u> and <u>closed out</u> by TransUnion Settlement Solution to put Chase in 2nd position.

9.     I personally signed the documents to accomplish the National City revolving credit line to be <u>Paid IN FULL</u> and <u>closed out</u> by TransUnion Settlement Solution as instructed.

10.    At this point, I was assured that the mortgage for the National City Account was going to be satisfied and recorded as satisfied on the property as Chase Bank was refusing to be in 3rd position on the property.

11.    On July 27, 2007, when the pay off was received, TransUnion Settlement Solutions applied the amount needed to pay off the debt to National City and allowed the 2nd mortgage to go to Chase.

12.    After TransUnion Settlement Solutions sent the money directly to National City, the processor did not complete the transaction by releasing the lien on the property.  The evidence of this transfer of funds to National City is in the PNC file on the document called the HUD-1 Settlement Statement.

13.    TransUnion Settlement Solutions assured me that the credit line was PAID IN FULL and closed out on that day, July 27, 2007.

14.    I have first hand knowledge of the following information as it was told to me and Cyndee Rae Estrada, my HUD trained counselor, by the PNC representative that after the close of escrow, someone at the <u>*servicing department*</u> mistook the payoff as if there was $16,008.11 remaining, even though those funds had never been distributed to me.  This is true as all credit lines have optional loans, they are not absolute loans and are only extended upon request.  I had never requested the remainder of the credit line from National City and had not borrowed the remaining money on the credit line.

# EXHIBIT

# B

15.     We spoke with Diana from PNC Bank (did not give a last name) who gave us a call back number of 412-803-1488 were she is the department Supervisor and was able to track down the error. Diana said that she would be working with her mortgage department to release the lien as soon as possible.

16.     The Recorder of Deeds also shows that the Chase loan originated on 7/26/2007 and recorded on 8/15/2007 was also paid in full and released on 9/27/2012 leaving no 2nd mortgage on the property.

17.     I relied on the personnel at TransUnion Settlement Solutions to do the job that they were hired to do, and I did not go back and check to see if the lien was released as promised. The reason that I did not check is because Chase refused to provide funds to me unless the National City Bank line of credit was paid in full and the lien was release.

18.     I have first hand knowledge that Proof of Claim #5 is a spurious claim and PNC is aware that this loan was paid in full in 2007 as they have this information in their files. I do not have any information on why Christopher Baxter presented this claim when PNC has this information *in their own files* as it was read to us on October 13, 2023 from the files at PNC.

19.     Christopher Baxter needs to go back to his client and get the true information as PNC is not a secured credit because there is no loan on the property that needs to be paid now.

20.     I make this affidavit to force the "attorney for PNC Bank" to contact both the mortgage department and Diana the Supervisor and get the information that was given to me, my HUD trained Counselor Cyndee Rae Estrada and also given to my wife, Linda Sevilla, confirming that National City Bank's credit line was **paid in full** upon the settlement on 7/27/2007.

21.     I make this affidavit to prove that PNC Bank has nothing to collect from me at this time and should have no involvement in this bankruptcy case. It was made perfectly clear that PNC Bank cannot enforce this **error** made by National City and TransUnion Settlement Solutions.

3

22.    I make this affidavit to prove that since National City presented TransUnion Settlement Services with the payoff that they needed to remove the lien of National City and they were paid the amount requested and they must now correct this **error** and **remove the lien from the property**.

23.    I make this affidavit as the malicious and outrageous misrepresentations regarding any party entitled to enforce a loan that I never requested, nor did I receive any of these funds from National City; this Proof Of Claim #5 must be removed from my bankruptcy.

24.    I make this affidavit to ensure that there is no true party in interest be brought into this case and all interlopers and imposters will be told to remove themselves from this bankruptcy case.

I, Pablo Fernando Sevilla, under penalty of perjury, make the above statements and swear they are true and correct and will be prepared to testify to these facts if required.

Dated: 10/16/2023

Pablo Fernando Sevilla

Notary Certification on next page

NOTARY CERTIFICATION

STATE OF I~~LLINOIS~~ Florida )
COUNTY OF ~~COOK~~ Palm Beach ) ss:

BE IT KNOWN, that on this 16th day of October _____ , 2023 before me, a Notary Public in and for the State and County aforesaid, duly commissioned and sworn, personally came and appeared Pablo Sevilla _____ who ____ did take an oath and produced proper identification in the form of ~~a~~ Identification Card .

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed my seal of office the day and year last above written.

NICOLE ROSSITTO
Notary Public · State of Florida
Commission # HH 138007
My Comm. Expires Jun 4, 2025

_Nicole Ro_____
NOTARY PUBLIC

_Nicole Rossitto_
Printed Notary Name

My Commission Expires:

Identification Produced:
__✓License ____Passport____Other: _____

5